UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

RAMBHAI PATEL,

Defendant.

Criminal No. 24-cr-10044-MJJ

**GOVERNMENT'S SENTENCING MEMORANDUM**

Across seven months in 2023, Defendant Rambhai Patel led and organized a conspiracy to stage eighteen armed robberies at different stores across the U.S. as part of a visa fraud scam. Patel hired a "robber" to storm into each store, brandish a realistic-looking replica firearm, and demand cash from the individuals behind the register. Patel charged noncitizens tens of thousands of dollars to participate as "victim" clerks in the staged armed robberies, so each could apply for a U visa as the victim of a crime. By organizing and directing this dangerous and fraudulent scheme, Patel enriched himself, earning approximately $850,000. Although no one was injured during these robberies, had an armed bystander or law enforcement happened into one of these stores during a staged robbery, it is not hard to imagine a deadly scene occurring. For Defendant's crime, the government respectfully requests that this court impose a sentence of just over 20 months in prison (representing the time Defendant will have been incarcerated at the time of sentencing),[1]

[1] The government calculates the time the defendant has served as 20 months and 8 days.

along with 3 years of supervised release, a fine between $7,500 and $75,000, the mandatory special assessment of $100, and forfeiture of $850,000.

## FACTS

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 12 through 23 of the Presentence Investigation Report ("PSR") issued on July 16, 2025. In summary, Patel organized a conspiracy to commit visa fraud with Balwinder Singh ("Singh") and another co-conspirator listed in the indictment as CC-1. Patel would identify noncitizens seeking U visas who were willing to pose as victims of robberies. In exchange for tens of thousands of dollars, Patel would direct his co-conspirators to stage an armed robbery at a store where the participating noncitizen(s) would pose as the victim(s).[2] After the staged robberies were reported to the police, the purported "victims" would complete a U visa application form, falsely claim that they were the victim of a qualifying crime. In total, Patel and his co-conspirators staged eighteen armed robberies at convenience, fast food, and liquor stores across the U.S. PSR ¶¶ 12 and 17.

***The U Visa***

The U visa (a colloquial term for U nonimmigration status) is available to victims of certain crimes who have suffered mental or physical abuse and who have been helpful to law enforcement in the investigation or prosecution of criminal activity. PSR ¶ 13. Examples of qualifying crimes for a U visa include extortion, false imprisonment, unlawful criminal restraint, and felonious assault. PSR ¶ 13. Victims of qualifying crimes may apply for U visa status by filing a United States Customs and Immigration Services ("USCIS") Form I-918 petition and the Form I-918

---

[2] Some of the robberies involved more than one "victim."

Supplement B ("Form 918-B"). PSR ¶ 13. The Form 918-B must be signed by an authorized official of a certifying law enforcement agency, confirming that the individual was a victim of a qualifying crime and has been or will be helpful in the investigation or prosecution of the case. PSR ¶ 13. Qualifying family members of the victim may also be eligible for a U visa. 8 CFR § 214.14(f).

***The Structure and Execution of the Conspiracy***

Beginning in March 2023 and through at least October 28, 2023, Patel willingly organized and led a conspiracy involving Singh, CC-1, and other co-conspirators to stage armed robberies at stores in Massachusetts, Kentucky, Pennsylvania, and Tennessee, knowing that the "victims" of the staged robberies intended to file I-918 petitions for U visas. PSR ¶¶ 12, 14-15 & 22.

Patel located individuals who wished to participate in the scheme as purported victims, including individuals who drove or flew into Massachusetts from out-of-state in order to pose as victims. PSR ¶ 17. Typically, Patel charged the victim co-conspirators tens of thousands of dollars each to participate in the scheme and shared some of the profits with his co-conspirators who performed the staged robberies. PSR ¶ 17.

Patel arranged with the store owners or managers for use of the store for the robbery, typically either paying the store owner/manager or permitting them to participate in the robbery as a purported victim. PSR ¶ 16. In some instances, in furtherance of the scheme, the co-conspirator who would be acting as the robber flew out-of-state to commit staged robberies at stores in other states. PSR ¶ 19. During the staged robberies, Patel would typically confirm with the store owner/manager that the store was empty of customers and then direct the robber co-conspirator by either voice call or text to enter the store and conduct the staged robbery. PSR ¶ 18. The co-conspirator acting as the robber would brandish what appeared to be a firearm and demand money

from the register.[3] PSR ¶ 18. At least one purported victim co-conspirator would provide money from or access to the register, and the co-conspirator acting as the robber would escape to a nearby getaway car before the purported victim called the police. PSR ¶ 18. Patel specifically instructed the purported victim co-conspirators not to call the police for five minutes to give the robber co-conspirator enough time to get away. PSR ¶ 18.

***The Fraudulent U Visa Applications***

At least 24 victim co-conspirators of the staged robberies submitted Forms 918-B to local police departments, claiming that the staged robbery in which they were involved qualified as one of the covered crimes and requesting that local police certify that they qualify as victims; at least ten of these individuals were purported victims of Massachusetts robberies. PSR ¶ 20. At least 11 purported victim co-conspirators submitted U-visa applications to USCIS claiming to have been victims of armed robberies, when these robberies were staged and organized by Patel; at least three of these individuals were purported victims of Massachusetts robberies. PSR ¶ 21.

***Patel's Substantive Crimes and Acts in Furtherance of the Conspiracy***

In furtherance of the conspiracy, Patel and his co-conspirators committed the following acts listed in the Indictment, among others, listed below. PSR ¶ 22.

1. On March 22, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at Store 1 in Hingham, MA.

2. On June 6, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at Store 2 in Weymouth, MA.

3. On June 9, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at Store 3 in Marshfield, MA.

4. On July 6, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at

[3] Two of the apparent firearms were recovered during the investigation and were determined not to be firearms, but rather to be replicas. PSR ¶ 18.

Store 4 in Upper Darby, PA.

5. On July 14, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at Store 5 in West Pittston, PA.

6. On July 26, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at Store 6 in Louisville, KY.

7. On August 9, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at Store 7 in Bean Station, TN.

8. On September 11, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at Store 8 in Randolph, MA.

9. On October 28, 2023, at the direction of Patel, CC-1 committed a staged armed robbery at Store 9 in Worcester, MA.

10. An individual described in the indictment as CC-4 paid Patel $20,000 in order to participate as a purported victim in the October 28, 2023 staged armed robbery.

11. In July 2023, an individual described in the indictment as CC-2 submitted a U Visa application to the United States, claiming under oath and subscribing as true that they were a victim of the March 22, 2023, Hingham staged armed robbery.

12. In July 2023, an individual described in the indictment as CC-3 submitted a U Visa application to the United States, claiming under oath and subscribing as true that they were a victim of the March 22, 2023, Hingham staged armed robbery.

Patel received approximately $850,000 from the eighteen staged armed robberies. PSR ¶ 23.

## DISCUSSION

### I. ***Sentencing Guideline Calculation***

Probation has calculated the defendant's total offense level as 15; the government agrees with this calculation. PSR ¶ 37. Probation has calculated Patel's criminal history category as I; the government also agrees with this calculation. PSR ¶ 42. Based on its calculations of a total offense level of 15 and criminal history category of I, Probation has calculated a guideline sentencing range ("GSR") in this case to include a term of incarceration from 18 to 24 months, a term of supervised release between 1 and 3 years, a fine between $7,500 and $75,000, and a special assessment of $100. PSR ¶¶ 73, 81-82. The government agrees with this calculation.

## II. *Plea Agreement*

The parties entered into a "B" plea agreement, in which Patel agreed to plead guilty to Count One of the Indictment: conspiracy to commit visa fraud in violation of 18 U.S.C. §§ 371 and 1546(a). The parties agreed that the total offense level was 15, and they agreed to recommend to the Court a sentence within the GSR as calculated by the parties, a fine within the GSR as calculated by the parties, 3 years of supervised release, a special assessment of $100, forfeiture of $850,000, and restitution to be determined at sentencing. Dkt. No. 86 at 2-3, ¶¶ 3-4.

## III. *Application of the Section 3553(a) Factors*

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) to determine a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include: the nature and circumstances of the offenses and the history and characteristics of the defendant; the need for the sentence imposed to satisfy the statutory purposes of sentencing; the kinds of sentences available; the applicable guidelines; pertinent Sentencing Commission policy statements; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution. In this case, these factors support a sentence of time served, (approximately 20 months and 8 days), 3 years of supervised release, a fine between $7,500 and $75,000, forfeiture of $850,000, and a mandatory special assessment of $100. There is no restitution in this case.

### A. Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public

The U visa was created to help law enforcement investigate crimes and to protect victims of human trafficking, sexual assault, domestic violence, and other serious crimes.[4] Here, Patel attempted to exploit a resource designed to help law enforcement and victims of serious crimes for his own financial gain. For his role as the organizer of the conspiracy, Patel pleaded guilty to conspiracy to commit visa fraud in violation of 18 U.S.C. §§ 371 and 1546(a). As such, the nature of his offense is quite serious.

Patel has admitted to organizing and executing a large-scale operation that staged eighteen armed robberies across four states. PSR ¶¶ 22-23. Although Patel attempted to make sure the stores were empty before each staged robbery, the dangerousness posed by his scheme cannot be understated. PSR ¶ 18. An unsuspecting bystander who entered the store unexpectedly during the staged robbery easily could have been involved or injured. Additionally, if a witness in the area called the police, it could have resulted in a dangerous encounter because the "robber" appeared to be armed. PSR ¶ 18. Patel's actions therefore underscore a gross disregard for the safety of the community and law enforcement officials, which should be reflected in his sentence.

Further, Patel's operation diverted significant government time and resources toward investigating fraudulent U visa applications and manufactured crimes. At least 24 of the victim co-conspirators submitted a Form 918-B to local police departments falsely claiming that they were qualified victims. PSR ¶ 20. There were also at least 11 fraudulent U visa applications submitted to USCIS. PSR ¶ 21. Consequently, local police departments and USCIS were deceived

[4] Victim of Criminal Activity: U Nonimmigrant Status, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (May 16, 2025), https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status

into processing and examining dozens of false U visas applications. Moreover, Patel's actions likely redirected substantial government resources away from legitimate victims seeking U visas.

Additionally, Patel's scheme resulted in wasteful armed robbery investigations by local police departments across four different states that wasted countless hours and resources. *See* PSR ¶ 22. Patel's actions demonstrate a blatant indifference for the victims of actual crimes and law enforcement's resources, which should be reflected in his sentence.

Patel was also the ringleader of the conspiracy and profited substantially from it. Patel organized the scheme and recruited his co-conspirators in Singh and CC-1. PSR ¶ 12. Patel located co-conspirators who were willing to pay him tens of thousands of dollars to pose as a victim of a crime so they could submit a U visa application. PSR ¶ 17. Patel would also contact store owners and arrange how the stores would be used in the robberies. PSR ¶ 17. While attempting to avoid being caught by not physically participating in the robberies, he was able to receive approximately $850,000 from the scheme. PSR ¶ 23. Here, the sentence should reflect Patel's role as the leader of the operation and his profit from the scheme. Importantly, the sentence should also deter individuals from organizing dangerous criminal operations for profit while hiding behind the actions of others.

The significant sentence of over 20 months in prison, along with 3 years of supervised release – and, notably, the forfeiture of the $850,000 proceeds from Defendant's crime – is the necessary and appropriate sentence in this case to reflect the seriousness of these offenses, to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same way again, and to protect the public.

### B. The History and Characteristics of Defendant

The government acknowledges the sympathetic circumstances included in the PSR about Patel's upbringing and family life. The government acknowledges and understands that Patel grew up in poverty in India and had to work to support his family from a young age. PSR ¶ 47. The government also recognizes that Patel suffered physical abuse from his extended family members and others in India before relocating to the United States. PSR ¶¶ 47-48. The government appreciates that Patel has a wife and son who he supports in New York. PSR ¶¶ 52-53. The government has considered these factors in recommending an appropriate sentence.

However, the government must also consider Patel's less sympathetic characteristics. In particular, Defendant engaged in this dangerous and illegal conduct in the United States while here unlawfully and is seeking immigration benefits from the United States – *i.e.*, simultaneously seeking benefits from the country while violating its laws. PSR ¶¶ 54-55. Considering all of these factors, a sentence of over 20 months in prison, 3 years of supervised release, and forfeiture is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in § 3553(a).

### C. Avoid Unwarranted Sentencing Disparities

The government's recommended sentence of just over 20 months in prison is not disproportionate compared to similarly situated defendants. Judiciary Sentencing Information ("JSIN") data submitted by Probation demonstrates that over the last five fiscal years, there were 5 defendants whose primary guideline was U.S.S.G. § 2L2.1 with a Total Offense Level ("TFL") of 15 and criminal history category I, after excluding defendants who received a § 5K1.1 substantial assistance departure. PSR ¶ 88. For the 5 defendants who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 14 months and

the median was 18 months. PSR ¶ 88. As an initial matter, the sample size of 5 defendants is quite small, suggesting that the Court should give it relatively less weight than if it were a more robust data set. Moreover, the government's recommended sentence of just over 20 months in prison is only slightly higher than the median sentence for defendants with the same TOL and CHC, which is appropriate considering the ways in which the offense level here understates the seriousness of Defendant's offense. For example, the same offense level would apply to a purely "paper case" in which a defendant led or organized a conspiracy that submitted 6 or more visa applications containing false statements; this case, involving Defendant staging armed robberies that included the brandishing of replica firearms, is far more serious.

Furthermore, the government's recommended sentence is proportionate to Defendant's responsibility when compared to the sentence recommended for one of his co-conspirators in this district. Specifically, the government has agreed in a plea agreement to recommend the low end of the applicable GSR, which it calculates as 4 months in prison, for Patel's co-conspirator, Balwinder Singh. Dkt. No. 86 at ¶ 4. The difference is due to Patel's role as the mastermind and leader of the conspiracy, responsible for all 18 staged robberies and the resulting fraudulent visa applications, as opposed to Singh's more limited involvement in only a subset of the robberies as a getaway driver. Patel organized the scheme and oversaw the execution of every detail in the conspiracy. Patel directed his co-conspirators, including Singh, to execute these staged robberies and potentially put themselves in harm's way for his own financial benefit.

In contrast, Singh's involvement in the conspiracy is much more limited in scope. CC-1 hired Singh to act as a getaway driver in several of the staged robberies in Massachusetts and Pennsylvania. In return, Singh received approximately $500 per staged robbery. Singh did not fly out of state to participate in the scheme. Rather, Singh only drove to participate in two out of state

"robberies" in Pennsylvania. Therefore, the recommended sentences for Patel and Singh are proportionate to their culpability in the conspiracy.

A sentence of just over 20 months properly reflects Patel's relative culpability within the conspiracy and the sentences that other co-conspirators are likely to receive, while also weighing the Guidelines and the JSIN data. Accordingly, the government's recommendation is consistent with the § 3553(a) goal of avoiding unwarranted sentencing disparities with co-conspirators and properly reflects the defendant's relative culpability.

[redacted]

[redacted]

## CONCLUSION

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose on Patel a sentence of 20 months and 8 days imprisonment, representing time served, to be followed by a term of supervised release of 3 years; a fine between $7,500 and $75,000, forfeiture of $850,000, and a mandatory special assessment of $100. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorney,

LEAH B. FOLEY
United States Attorney

*<u>/s/ Elianna J. Nuzum</u>*
Elianna J. Nuzum
Jessica L. Soto
Assistant United States Attorneys
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
jessica.soto@usdoj.gov
617.748.3100

Dated: August 8, 2025

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Jessica L. Soto*
Jessica L. Soto
Assistant United States Attorney

Dated: August 8, 2025